Opinion issued June 19, 2008








     





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00648-CV




EARL CLARENCE SMITH A/K/A CLARENCE EARL SMITH, Appellant

v.

DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee




On Appeal from the 314th District Court 
Harris County, Texas
Trial Court Cause No. 2005–08024J




MEMORANDUM OPINIONFollowing a bench trial, the trial court terminated the parental rights of
appellant, Earl Clarence Smith a/k/a Clarence Earl Smith, to his two minor children,
B.H.M. and B.C.M. Presenting three issues, Smith challenges the legal and factual
sufficiency of the evidence to support the findings supporting termination. 
          We affirm.
Background
          B.H.M. and B.C.M., who are twin brother and sister, were born on September
8, 2005 to Debbie Mace. Six days after their birth, the Department of Family and
Protective Services (“DFPS”) filed a petition initiating termination proceedings and
seeking temporary custody of the twins. DFPS sought to terminate the parental rights
of Mace and the twins’ “unknown father.” An affidavit offered to support the petition
and signed by a DPFS representative revealed that, at the time of the twins’ birth,
Mace tested positive for cocaine and marijuana, and the twins tested positive for
marijuana. The affidavit also stated that Mace was “suffering from a severe cerebral
hemorrhage,” which left her “incapacitated” and unable to communicate. The DPFS
representative also stated that it had been reported that the father, whose identity was
unknown, was incarcerated in a Huntsville prison. DPFS amended its petition on
April 26, 2006, naming Smith as the twins’ father. 
          The case was tried to the bench on January 9, 2007. At trial, it was revealed
that testing confirmed that Smith was the twins’ biological father. Following the trial,
the trial court signed a judgment terminating Mace’s and Smith’s parental rights. The
judgment reflects that Mace signed an affidavit of relinquishment, giving up her
parental rights to the twins. The judgment further reflects that the trial court found
that the parent-child relationship between Smith and the twins should be terminated
because he had “constructively abandoned” the twins, as defined in Family Code
section 161.001(1)(N). The court also found that termination was in the twins’ best
interest. 
          Smith filed a motion for new trial, which was granted by the trial court. On
May 24, 2007, the trial court conducted a second bench trial regarding the termination
of Smith’s parental rights.
          At the conclusion of the termination proceeding, the trial court orally found
that the parent-child relationship between Smith and the twins should be terminated
pursuant to Family Code subsections 161.001(1)(E) and (Q). One week later, the trial
court signed a judgment in conformity with the oral findings.
          In support of termination, the judgment recites that the trial court found, by
clear and convincing evidence, that terminating Smith’s parental rights was in the
children’s best interest. The judgment further recites that the trial court found, by
clear and convincing evidence, that Smith (1) has “engaged in conduct or knowingly
placed the children with persons who engaged in conduct which endangers the
physical or emotional well-being of the children, pursuant to § 161.001(1)(E) of the
Texas Family Code” and (2) has “knowingly engaged in criminal conduct that has
resulted in the father’s conviction of an offense and confinement or imprisonment and
inability to care for the children for not less than two years from the date of the filing
the petition, pursuant to § 161.001(1)(Q) of the Texas Family Code.”


 No findings
of fact or conclusions of law were filed or requested.
          Smith timely filed a motion for new trial, statement of appellate points, and a
notice of appeal. Among the issues Smith identified in his statement of points were
legal and factual sufficiency challenges to the predicate and best interest findings
supporting termination. The trial court denied Smith’s motion for new trial and found
Smith’s appeal not to be frivolous.


 
          On appeal, Smith presents three issues. His first two issues raise challenges to
the legal and factual sufficiency of the evidence to support the predicate termination
findings under subsections 161.001(1)(E) and (Q). Smith’s third issue challenges the
legal and factual sufficiency of the evidence to support the trial court’s finding that
termination was in the twin’s best interest. 
Legal and Factual Sufficiency Challenges
A.      Burden of Proof and Standards of Review 
          The burden of proof at trial in parental-termination cases is by clear and
convincing evidence. Tex. Fam. Code Ann. § 161.001; In re J.F.C., 96 S.W.3d 256,
263 (Tex. 2002). Section 161.001 of the Family Code provides the method by which
a court may involuntarily terminate the parent–child relationship. See Tex. Fam.
Code. Ann. § 161.001. Under this section, a court may order the termination of the
parent–child relationship if the court finds, by clear and convincing evidence, that (1)
one or more of the acts enumerated in section 161.001(1) was committed and (2)
termination is in the best interest of the child. Id. 
          “‘Clear and convincing evidence’” means the measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to the truth
of the allegations sought to be established.” Tex. Fam. Code. Ann. § 101.007
(Vernon 2002); J.F.C., 96 S.W.3d at 264. This heightened burden of proof results in
a heightened standard of review.
          When determining legal sufficiency, we review all the evidence in the light
most favorable to the finding “to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true.” J.F.C., 96 S.W.3d
at 266. To give appropriate deference to the factfinder’s conclusions, we must
assume that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so. Id. We disregard all evidence that a reasonable
factfinder could have disbelieved or found to have been incredible. Id. This does not
mean that we must disregard all evidence that does not support the finding. Id. 
Disregarding undisputed facts that do not support the finding could skew the analysis
of whether there is clear and convincing evidence. Id. Therefore, in conducting a
legal-sufficiency review in a parental-termination case, we must consider all of the
evidence, not only that which favors the verdict. See City of Keller v. Wilson, 168
S.W.3d 802, 817 (Tex. 2005).
          In determining a factual-sufficiency point, the higher burden of proof in
termination cases also alters the appellate standard of review. In re C.H., 89 S.W.3d
17, 26 (Tex. 2002). “[A] finding that must be based on clear and convincing evidence
cannot be viewed on appeal the same as one that may be sustained on a mere
preponderance.” Id. at 25. In considering whether evidence rises to the level of being
clear and convincing, we must consider whether the evidence is sufficient to
reasonably form in the mind of the factfinder a firm belief or conviction as to the truth
of the allegation sought to be established. Id. We consider whether disputed
evidence is such that a reasonable factfinder could not have resolved that disputed
evidence in favor of its finding. J.F.C., 96 S.W.3d at 266. “If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction, then the evidence is factually insufficient.” Id.
          The natural rights that exist between parents and their children are of
constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
Therefore, termination proceedings should be strictly scrutinized, and the involuntary
termination statutes should be strictly construed in favor of the parent. Id. at 20–21. 
However, “[j]ust as it is imperative for courts to recognize the constitutional
underpinnings of the parent-child relationship, it is also essential that emotional and
physical interests of the child not be sacrificed merely to preserve that right.” C.H.,
89 S.W.3d at 26.
B.      Challenge to Predicate Finding Under Subsection 161.001(1)(Q)
          In his second issue, Smith contends that the evidence was legally and factually
insufficient to support the trial court’s predicate finding under subsection
161.001(1)(Q). 
          1.       Subsection 161.001(1)(Q) Principles
          Subsection Q permits termination when the clear and convincing evidence
shows that the parent “knowingly engaged in criminal conduct that has resulted in the
parent’s: (i) conviction of an offense and (ii) confinement or imprisonment and
inability to care for the child for not less than two years from the date of filing the
petition.” Tex. Fam. Code Ann. § 161.001(1)(Q) (Vernon Supp. 2007); see In re
A.V., 113 S.W.3d 355, 360–61 (Tex. 2003). We apply subsection Q prospectively. 
A.V., 113 S.W.3d at 360. That is, subsection Q permits termination if the evidence
shows that, during the two-year period following the initiation of the termination
proceedings, the parent will be confined or imprisoned and unable to care for the
child. See id. at 360–61. 
          Establishing incarceration for the requisite period does not, by itself, justify
termination pursuant to subsection Q. In re B.M.R., 84 S.W.3d 814, 818 (Tex.
App.—Houston [1st Dist.] 2002, no pet.); In re Caballero, 53 S.W.3d 391, 395 (Tex.
App.—Amarillo 2001, pet. denied). The evidence must also show the parent’s
inability to care for the child for two years from the date of the petition’s filing. 
B.M.R., 84 S.W.3d at 818. Thus, as separate requirements, incarceration and an
inability to care for the child must each be established by the evidence to support
termination. See In re H.R.M., No. 14-05-00281-CV, 2007 WL 707553, at*1 (Tex.
App.—Houston [14th Dist.] Mar. 8, 2007, no pet.) (mem. op.); see also B.M.R., 84
S.W.3d at 818. 
          With these principles in mind, we now turn to Smith’s contentions regarding
the subsection Q finding.
          2.       Evidence Regarding Incarceration
          DFPS filed its original petition on September 14, 2005. It amended its petition 
on March 16, 2006 to include a subsection Q ground to support termination of
Smith’s parental rights. Thus, at the latest, DFPS had to show that Smith would
remain incarcerated on March 16, 2008.


 
          Smith contends that DFPS did not prove that he would remain incarcerated two
years after the filing of the petition. Smith asserts that DFPS “failed to introduce any
evidence as to when Appellant was going to be released . . . .” Contrary to Smith’s
contention, DFPS introduced evidence establishing that Smith was convicted of the
felony offenses of burglary with intent to commit theft and aggregate theft. Pursuant
to plea agreements, Smith was sentenced to four years in prison for each offense. The
judgments of conviction indicate that appellant began serving the four-year sentences
on September 19, 2005. Simple math provides a release date of September 19, 2009. 
          Smith also implies that the evidence was insufficient because he could possibly
be paroled before the expiration of the required subsection Q time period. Smith cites
his own trial testimony in which he stated that he would be “up for parole pretty
soon.” He asserts that DFPS offered no evidence regarding his eligibility for parole
to controvert his testimony. 
          In the context of subsection Q termination, the Texas Supreme Court discussed
the effect of evidence showing that an incarcerated parent would be considered for
parole in In re H.R.M., 209 S.W.3d 105 (Tex. 2006). The H.R.M. court explained,
“Mere introduction of parole-related evidence . . . does not prevent a factfinder from
forming a firm conviction or belief that the parent will remain incarcerated for at least
two years.” Id. at 109. The supreme court continued, “Parole decisions are inherently
speculative, and while all inmates doubtless hope for early release and can take
positive steps to improve their odds, the decision rests entirely within the parole
board’s discretion.” Id. (citations omitted). Indeed, the evidence here, showed that,
at most, Smith would be considered for parole. 
          The H.R.M. court also observed that the jury was free to disregard the father’s 
testimony regarding parole. Id. Likewise, here, the trial court, as factfinder, was
entitled to disregard Smith’s testimony regarding parole. See id.
          3.       Evidence Regarding Ability to Care for the Twins
          Smith also contends that DFPS has failed to offer sufficient evidence to show
his inability to care for the twins. Smith claims that the only evidence offered by
DFPS regarding his inability to care for the children was the DFPS caseworker’s
testimony that she believed termination was in the children’s best interest because
Smith had not completed his service plan. Smith asserts the caseworker’s testimony
in this regard is “conclusory.” Contrary to Smith’s contention, additional testimonial
evidence was elicited during trial that supports a finding that Smith did not have the
ability to care for the children during the requisite period of incarceration. 
          “[F]actors to be considered when deciding inability to care include the
availability of financial and emotional support from the incarcerated parent.” 
Brazoria County Children’s Protective Servs. v. Frederick, 176 S.W.3d 277, 279
(Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing B.M.R., 84 S.W.3d at 818). 
Here, the evidence shows that, since learning that he was the twins’ biological father,
Smith has made no attempt to assist the children financially or to contact them either
directly or through a family member. Smith claimed that he owned a home, but
offered no evidence that he has made any effort to use the property or any other
resource he may have to assist the children financially. Smith confirmed that he had
been in contact with DFPS but admitted that he had not identified for the agency any
relatives who could care for the twins. 
          Smith implies that it was DFPS’s burden to show that it had asked him for the
names of relatives who could care for the children. We disagree. Requiring DFPS
to prove that it had affirmatively asked Smith for the names of persons who could
care for the children while he was incarcerated would not be reasonable. See
Caballero, 53 S.W.3d at 396 (refusing to place burden on TDPRS to disprove
existence of anyone with whom parent’s child could be placed during his
incarceration because adopting such rule would place an unreasonable burden on
agency and judicial resources); see also Thompson v. Texas Dep’t of Family &
Protective Servs., 176 S.W.3d 121, 127 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied) (rejecting as unreasonable parent’s argument that TDPRS had duty “to
continually inquire as to a prisoner’s efforts and accomplishments in regard to a
service plan”), overruled on other grounds by, Cervantes-Peterson v. Texas Dep’t of
Family & Protective Servs., 221 S.W.3d 244, 252 (Tex. App.—Houston [1st Dist.]
2006, no pet.).
          Smith also cites his own testimony to show that he had the ability to care for
the twins. He testified that, when not incarcerated, he worked as landscaper making
$300 a week. As mentioned, Smith also testified that he owned a home. 
          At trial, Smith stated that he believed one of his nieces could care for the twins
while he was in prison. Smith claimed that he planned to contact his brother to make
the necessary arrangements with his niece. He testified that he had not taken the steps
to determine whether a family member could care for the twins because, until the first
trial, neither he nor his family were certain that the twins were his biological children. 
While the record supports this claim, it does not explain why, in the four months
between the first trial and the instant proceeding, Smith had taken no steps to show
an ability to care for his children. 
          Significantly, no evidence showed that Smith had actually arranged for
someone to care for the twins while he was incarcerated. Nor was evidence presented
that anyone from Smith’s family was willing or able to care for the children during
his incarceration. See In re H.R.M., 2007 WL 707553, at*3 (noting significance of
father’s inability to testify that he had arranged for someone to care for child during
his incarceration in conducting factual-sufficiency analysis in subsection Q case);
Caballero, 53 S.W.3d at 396 (explaining that, because incarcerated father presented
no evidence to show that someone was available to care for his child during his
incarceration, trial court’s finding regarding inability to care could not be against
overwhelming weight of evidence); In re C.E.V., No. 09-03-468-CV, 2004 WL
1902537, at *3 (Tex. App.—Beaumont Aug. 26, 2004, pet. denied) (mem. op.)
(concluding trial court’s finding that incarcerated parent’s conviction resulted in his
inability to care for child was supported by clear and convincing evidence when
incarcerated parent did not refer court to any evidence his mother could and would
provide care for child during his incarceration and petitioners had no burden to
disprove mother’s capacity to care for child); cf. In re E.S.S., 131 S.W.3d 632, 640
(Tex. App.—Fort Worth 2004, no pet.) (reversing termination order, in part, because
evidence showed that parent had arranged for care during incarceration by naming
incarcerated parent’s mother and brother as possessory conservators with visitation
rights). 
          Moreover, with regard to Smith’s testimony, the trial court, as the sole arbiter
when assessing the credibility and demeanor of witnesses, was free to disregard all
or part of it. See H.R.M., 209 S.W.3d at 109. Thus, the trial court may have
disbelieved Smith’s testimony that he owned a home, made $300 when working, and
had family members who could possibly care for the twins.
          4.       Knowing Requirement
          As mentioned, subsection Q permits termination if the parent “knowingly
engaged in criminal conduct that has resulted in the parent’s: (i) conviction of an
offense and (ii) confinement or imprisonment and inability to care for the child for
not less than two years from the date of filing the petition.” Tex. Fam. Code Ann.
§ 161.001(1)(Q). Smith reads subsection Q to require a showing that he knew that
he was the twins’ father before he committed the criminal conduct that resulted in his
inability to care for his children.


 Smith points out that the evidence indicates that he
did not know that he was the twins’ father at the time he committed the criminal
offenses for which he was ultimately convicted and imprisoned. 
          We disagree with Smith’s interpretation of subsection Q and find no legal
authority to support it. The Government Code requires that, when reading a statutory
provision,“Words and phrases shall be read in context and construed according to the
rules of grammar and common usage.” Tex. Gov’t Code Ann. § 311.011(a)
(Vernon 2005). Employing a grammatically correct reading of the statute leads to
only one conclusion: the knowing requirement in subsection Q pertains to a showing
that the parent knowingly engaged in the underlying criminal conduct that resulted
in his conviction, imprisonment, and inability to care for his child. Subsection Q
cannot be reasonably read to require a showing that the parent knew he was the
child’s parent at the time he engaged in the criminal conduct. 
          Smith has made no assertion that the evidence was insufficient to show that he
knowingly engaged in the criminal conduct that resulted in his incarceration. Indeed,
we note that the indictments for the offenses underlying his convictions allege
knowing and intentional criminal conduct by Smith. The record further shows that
Smith pleaded guilty to and was convicted of these offenses. 
          5.       Conclusion Regarding Subsection Q Finding
          Given the record, we conclude that the evidence, viewed in the light most
favorable to the section 161.001(1)(Q) finding, was sufficiently clear and convincing
that a reasonable factfinder could have formed a firm belief or conviction that Smith
knowingly engaged in criminal conduct that has resulted in his (i) conviction of an
offense and (ii) confinement or imprisonment and an inability to care for the children
for not less than two years from the date of the filing the petition. We further
conclude that, viewed in light of the entire record, any disputed evidence could have
been reconciled in favor of the section 161.001(1)(Q) finding or was not so
significant that the factfinder could not reasonably have formed a firm belief or
conviction that the elements of subsection Q were shown. Accordingly, we hold that
the evidence was legally and factually sufficient to support the section 161.001(1)(Q)
finding.
          We overrule Smith’s second issue.



C.      Best Interest Finding
          In his third issue, Smith challenges the trial court’s finding that termination
would be in the twins’ best interest. See Tex. Fam. Code Ann. § 161.001(2) (Vernon
Supp. 2007). Some of the factors that an appellate court may consider in ascertaining
the best interest of a child include the non-exhaustive list set forth in Holley v. Adams, 
544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include the following: (1) the
desires of the child; (2) the emotional and physical needs of the child now and in the
future; (3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs available
to assist these individuals to promote the best interest of the child; (6) the plans for
the child by these individuals or by the agency seeking custody; (7) the stability of
the home or proposed placement; (8) the acts or omissions of the parent that may
indicate that the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parent. Id. These factors are not exhaustive. 
C.H., 89 S.W.3d at 27. “Best interest” does not require proof of any unique set of
factors, nor does it limit proof to any specific factors. Holley, 544 S.W.2d at 371–72. 
          The Holley test focuses on the best interest of the child, not the best interest of
the parent. In re R.F., 115 S.W.3d 804, 812 (Tex. App.—Dallas 2003, no pet.). The
need for permanence is the paramount consideration for a child’s physical and
emotional needs. Id.
          With the foregoing legal precepts in mind, we review the legal and factual
sufficiency of the evidence to support the trial court’s finding that termination was
in the children’s best interest.
          The evidence discussed above supporting the subsection Q determination is
also probative of whether termination of Smith’s parental rights is in the twin’s best 
interest. See C.H., 89 S.W.3d at 28. That is, the evidence showing that (1) Smith is
incarcerated with a release date of September 19, 2009; (2) Smith has not arranged
for someone to care for the children while he is incarcerated, nor could he testify with
certainty that anyone in his family would care for the twins; (3) Smith has not
contacted the twins during the four months since his paternity was confirmed; and (4)
Smith has not provided any financial support to the twins supports the best interest
finding. 
          At trial, other evidence was also probative of whether termination would be in
the children’s best interest. Significantly, the evidence showed that Smith has an
extensive criminal history spanning more than 30 years. Specifically, in addition to
the two offenses for which Smith was serving time in prison at the time of trial, the
evidence showed that Smith had the following criminal convictions: (1) burglary in
1972 for which Smith served over three years in prison; (2) aggravated robbery in
1974 for which he served eight years in prison; (3) “burglary of a motor vehicle” in
1989, for which he was sentenced to twenty-five years but served 34 months in
prison; and (4) unauthorized use of a motor vehicle in early 2005 for which he served
eleven months in jail.
          The evidence also showed that the 21-month old twins were placed with their
current foster parents when they were six weeks old. The DFPS caseworker testified
that the twins are “very, very attached” to the foster parents. 
          DFPS also presented evidence that Smith had received a copy of his family
service plan. The caseworker testified that DFPS had not received any documentation
from Smith to show that he had taken steps toward completing the services identified
in the service plan. 
          Smith testified that he had not completed the services because he did not know
he was the twins’ father until the first trial. He offered no explanation why he had not
completed any services in the four months since the first trial. Smith acknowledged
that parenting classes are available in prison. He stated that there was a waiting list
for the parenting classes but did not indicate whether he was on the waiting list. 
          In arguing against the best-interest finding, Smith points out that DFPS
presented no evidence regarding many of the Holley factors. We note absence of
evidence regarding some of the Holley factors is not determinative. The supreme
court has made clear that the absence of evidence regarding some of these factors
does not preclude a factfinder from reasonably forming a strong conviction or belief
that termination is in the child’s best interest. C.H., 89 S.W.3d at 27. 
          As evidence weighing against the best-interest finding, Smith also cites his
own testimony that he owns a home and would earn $300 a week after his release.
Smith also expressed a willingness to care for the children. 
          Smith also generally points out that the evidence shows his paternity had been
confirmed only for a short time, thus preventing him from demonstrating his abilities
to provide adequate care and a suitable home for the children. We note that the
evidence showed that paternity was confirmed four months before trial. We also
note, however, that nothing in the record indicates that Smith made any efforts during
that time to demonstrate a desire or an ability to be a parent to the children.
          In sum, the record contains some evidence showing that Smith expresses a
desire to be a parent to the twins and demonstrating that he has given some thought
regarding how he would care for the twins. Nonetheless, evidence cannot be read in
isolation; it must be read in the context of the entire record. Given the evidence, the
trial court could have reasonably inferred that the twins were at risk for neglect and
abuse if they were placed with Smith and that Smith could not provide them with a
stable home. We conclude that the evidence, viewed in the light most favorable to
the best-interest finding, was sufficiently clear and convincing that a reasonable
factfinder could have formed a firm belief or conviction that termination of the
parent-child relationship between Smith and the twins was in the children’s best
interest. 
          We further conclude that, viewed in light of the entire record, any disputed
evidence could have been reconciled in favor of the trial court’s finding that
termination of the parent-child relationship between appellant and the twins was in
the children’s best interest or was not so significant that the trial court could not
reasonably have formed a firm belief or conviction that termination was in the
children’s best interest. Thus, we hold that the evidence was legally and factually
sufficient to support the best-interest finding.
          We overrule Smith’s third issue.
Conclusion
          We affirm the judgment of the trial.
 
 
Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.