Opinion issued July 15, 2004












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01232-CV




BRAZORIA COUNTY CHILDREN’S PROTECTIVE SERVICES, Appellant

V.

KENNETH FREDERICK, Appellee




On Appeal from the 300th District Court 
Brazoria County, Texas
Trial Court Cause No. 15788*RH01




O P I N I O N
          This is an appeal from a suit affecting the parent-child relationship
(SAPCR),


 in which appellant, Brazoria County Children’s Protective Services
(“CPS”), the petitioner in the trial court, challenges a directed verdict that denied
CPS’s request to terminate the parent-child relationship between appellee, Kenneth
Frederick, and his minor child, T.F. CPS also challenges the exclusion of evidence
of portions of Frederick’s past criminal history. We reverse and remand.
Facts and Procedural Background
          Frederick has been incarcerated since October 1997. Frederick never made
bail, was transferred to TDC-Dalhart in 1999, and is not eligible for parole until
2004. He has been imprisoned throughout the lifetime of his son, T.F., who was
born in December 1997. The child’s mother, Tami Wiggins, and Frederick were
never married, but Frederick knew that he was probably T.F.’s father, and a
paternity test established that he is the father. Frederick has been married to
another woman since before T.F.’s birth. Frederick has fathered only one child by
his wife, but has eight children by three other women. Frederick has not paid child
support for any of the children.
          Tami brought infant T.F. to see Frederick in prison twice a week until he
was transferred to a more remote facility. Frederick sent letters to Tami asking
about T.F. and has sent him birthday cards. Tami died in December 2001, when
T.F. was four years old, and Tami’s mother, Roberta, assumed care of T.F. On two
occasions, however, neighbors had to bring T.F. back to Roberta after T.F. had
wandered away. CPS was eventually summoned after an incident in which T.F.
had again wandered away after Roberta blacked out due to a health condition. 
When T.F. was found, he was very thin, his teeth were rotted, black, and, in the
front of his mouth, broken, jagged, and sharp. CPS took T.F. into protective
custody and, from there, transferred him to a foster home.
          T.F. has many health problems. He was born eight weeks prematurely and
was without a throat at birth. He still had esophagal problems at the time of trial
and had an eating disorder that resulted in his vomiting whatever he ate, although
that condition has improved, and he still needs surgery for a testicle that has not yet
descended. He is very happy in the home of his foster parents.
          CPS petitioned to terminate Frederick’s parental rights involuntarily
pursuant to section 161.001(2) of the Family Code and to multiple provisions of
section 161.001(1).


 Roberta filed a separate petition to adopt T.F., and the cases
were consolidated for a jury trial. During trial, T.F.’s foster parents intervened to
seek joint managing conservatorship of T.F. if Frederick’s rights were terminated
and if Roberta succeeded in adopting T.F. CPS succeeded in presenting some
evidence of Frederick’s criminal history, but was precluded from introducing
Frederick’s complete criminal history.
          At the close of CPS’s case, Frederick moved for a directed verdict on the
basis of no evidence or insufficient evidence to support terminating his parental
rights. In response to Frederick’s motion, CPS argued that legally sufficient
evidence had been presented to the jury to support terminating Frederick’s rights
pursuant to subsections 161.001(D), (E), (F), (H), and (Q) of the Family Code. In
granting Frederick’s motion and directing a verdict in his favor, the trial court
stated, “I don’t believe that the State, given the evidence before this Court, is
empowered to take away the parental rights of the natural father; and therefore I
am compelled to grant your motion for instructed verdict.”
          Because the trial court rendered the directed verdict in favor of Frederick, no
question was submitted to the jury concerning his parental rights. The jury
returned a verdict in favor of granting Roberta and the foster mother, Rogers, joint
managing conservatorship. In accordance with the directed verdict in Frederick’s
favor, the trial court awarded him possessory conservatorship to commence on his
discharge from prison.
Directed Verdict Refusing to Terminate Frederick’s Rights
          In its first issue, CPS contends that the trial court erred by granting
Frederick’s motion for directed verdict. Before addressing this issue, we respond
to a challenge by Frederick to the standing of CPS to bring this appeal. We reject
Frederick’s challenge under well-settled law. CPS’s standing in the trial court
derived from its joint managing conservatorship of T.F., which CPS shared with
the foster parent. See Tex. Fam. Code Ann. § 161.003(a)(3) (Vernon 2002)
(authorizing termination of parental rights on petition of CPS “if the department
has been the temporary or sole managine conservator of the child of the parent for
at least six months preceding the date of the hearing on the termination. . . .”). As
a party of record in the trial court, CPS had standing to appeal. Gunn v.
Cavanaugh, 391 S.W.2d 723, 724-25 (Tex. 1965); Subsequent Injury Fund v.
Service Lloyds Ins. Co., 961 S.W.2d 673, 677 (Tex. App.—Houston [1st Dist.]
1998, pet. denied).
          A directed verdict in favor of defendant is appropriate when the plaintiff
does not present evidence to raise a fact issue that is essential to the plaintiff’s right
of recovery. Prudential Ins. Co. v. Fin. Review Servs., 29 S.W.3d 74, 77 (Tex.
2000). In reviewing a directed verdict, we consider all of the evidence in the light
most favorable to the party against whom the verdict was instructed, here CPS,
disregard all contrary evidence and inferences, and give CPS, as the losing party,
the benefit of all reasonable inferences that follow from the evidence. See
Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994).
          Although CPS relied on several subsections of section 161.001 in seeking
involuntary termination of Frederick’s parental rights, CPS focuses on appeal on
section 161.001(1)(Q) of the Family Code, which provides as follows:
The court may order termination of the parent-child relationship if the court
finds by clear and convincing evidence:
 
(1)that the parent has:
 
(Q)knowingly engaged in criminal conduct that has resulted
in the parent’s:
 
(i)conviction of an offense; and
 
(ii)confinement or imprisonment and inability
to care for the child for not less than two
years from the date of filing the petition.

Tex. Fam. Code Ann. § 161.001(1)(Q) (Vernon 2002).

          This Court construed section 161.001(1)(Q) in the case In re B.M.R., 84
S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.).
          A.      Knowingly Engaged in Criminal Conduct – Ability to Care for T.F.
          Section 161.001(1)(Q) requires a showing of the parent’s inability to care for
the child. B.M.R., 84 S.W.3d at 818. Incarceration alone does not show inability
to care for the child. Id. Although the term “care” has not been defined in either
the statute or in subsequent case law, this Court concluded that the factors to be
considered when deciding inability to care include the availability of financial and
emotional support from the incarcerated parent. See id.
          As in B.M.R., in which the father acknowledged his lack of financial means
to support his child while in prison, Frederick also acknowledged that he could do
nothing for T.F. while in prison. See id. In affirming termination of parental rights
in B.M.R., this Court noted the father’s history of failing to pay child support, not
only for B.M.R., but for several of his other children. Id. Although every one of
Frederick’s children, except T.F., is now beyond the need for child support, it is
undisputed that Frederick never paid child support for any of his children, a factor
that raises triable issues of fact concerning Frederick’s ability to provide financial
support for T.F.
          In considering the father’s ability to provide emotional support in B.M.R.,
this Court noted that the father had seen his child only a few times, had spent a
limited amount of time with the child, and had not sent any gifts or cards for
birthdays or Christmases. 84 S.W.3d at 819. Unlike B.M.R, Frederick sent
birthday cards. See id. Otherwise, the circumstances are similar to B.M.R. See id. 
In this case, it is undisputed that Frederick has not seen T.F. since 1999 and he did
not send gifts to his child from prison. Although Frederick also testified that he
wanted to be a father to T.F. and to provide him a home, clothing, food, and
medication, the remoteness from his child, as demonstrated by the record, raises
triable issues of fact concerning his ability to provide emotional support for T.F.
          Section 161.001(1)(Q) also requires a showing of the parent’s inability to
care for the child for not less than two years from the date of filing the petition. 
Tex. Fam. Code Ann. § 161.001(1)(Q)(ii). The supreme court has held that this
two-year requirement is applied prospectively from the filing of the petition. In re
A.V. and J.V., 113 S.W.3d 355, 360 (Tex. 2003). In support of its holding, the
supreme court explained,
In reading subsection Q to apply prospectively, the subsection fills a
gap left by other grounds for termination. A prospective reading of
subsection Q allows the State to act in anticipation of a parent’s
abandonment of the child and not just in response to it. Thus, if the
parent is convicted and sentenced to serve at least two years and will
be unable to provide for his or her child during that time, the State
may use subsection Q to ensure that the child will not be neglected.

Id. In this case, Frederick was initially incarcerated in 1997 and was transferred to
TDC-Dalhart in 1999. CPS filed the petition to include subsection Q as a ground
for termination on May 10, 2001. Frederick will not be eligible for parole until
2004. Thus, because Frederick’s incarceration will extend for not less than two
years from the date of filing the petition, CPS could properly seek termination of
Frederick’s parental rights under subsection 161.001(1)(Q). See In re A.V. and
J.V., 113 S.W.3d at 360.
          After considering the evidence in the light most favorable to CPS, we
conclude that the evidence raised triable issues of fact for the jury’s determination
concerning Frederick’s ability to care for T.F. Accordingly, to the extent that the
trial court premised its ruling on section 161.001(1), the directed verdict was
improper.
 
 
          B.      Best Interests of T.F.
          To avoid the directed verdict, CPS also had to present evidence that
termination of Frederick’s parental rights was in the best interest of T.F. See Tex.
Fam. Code Ann. § 161.001(2) (Vernon 2002). In B.M.R., we applied the
following, well-settled Holley factors in determining best interest under section
161.001(2): 
          1.       The child’s desires;
 
          2.       The child’s physical and emotional needs, now and in the future;
 
          3.       The emotional and physical danger to the child, now and in the future;
 
          4.       The parental ability of the individuals seeking custody;
 
          5.       The programs available to assist these individuals in promoting the
child’s best interest;
 
          6.       The plans for the child by the individual or agency seeking custody;
 
          7.       The stability of the home or proposed placement;
 
          8.       The parent’s act or omissions that may indicate the existing parent-child relationship is not the proper one; and
 
          9.       Any excuse for the parent’s acts or omissions.

B.M.R., 84 S.W.3d at 819 (citing Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.
1976)).
 
 
          1.       The desires of the child
          Just as in BMR, in which the “child probably has little, if any, conscious
knowledge of [his birth father],” there is no evidence that T.F. knows who his
father is or asks about his father. T.F. seems happy with his foster parents. They
go horseback riding, take trail rides, visit museums and the library, and read stories
together.
          2.       The child’s physical and emotional needs, now and in the future
          Frederick stated that he wants to play a part in T.F.’s life. He has taken
some classes in prison to obtain his GED and intends to work as a bricklayer when
he is released. He did not know, however, until trial, about T.F.’s many digestive
problems. The record reflects that, in granting Frederick’s motion for directed
verdict, the trial court stated, “I think this child is exactly in the same position as
Ashley Caballero.” See In re Caballero, 53 S.W.3d 391 (Tex. App.—Amarillo
2001, pet. denied). In upholding termination of the parent’s rights, the Caballero
court wrote, “Because incarceration is inherently inconsistent with providing
personal care for a child, the legislature’s inclusion of the phrase ‘and inability to
care for the child’ would be meaningless unless care encompassed arranging for
care to be provided by another.” 53 S.W.3d at 396.
          The record here shows that Roberta, T.F.’s maternal grandmother, is willing
to care for T.F. until Frederick is out of prison, but the record also establishes that
Roberta is in failing health and that T.F. was removed from her care for that
reason. Similarly, although Frederick’s mother came forward at the time of trial to
state her willingness to care for T.F., it is undisputed that she has not previously
had any contact with T.F. There was also some evidence that one of Frederick’s
daughters might assume care of T.F., but the daughter did not respond to CPS’s
inquiries.
          3.       The emotional and physical danger to the child, now and in the future
          In B.M.R., we expressed concerns about the father’s involvement with drug
trafficking and concluded that this history raised legitimate fears for the future
safety of the child. 84 S.W.3d at 820. This case presents the same concerns. In
October 1997, Frederick was arrested for six different counts of delivery with
intent to sell a controlled substance and possession of a controlled substance. He
was convicted in 1999 and is currently serving his 11-year sentence.
          4.       The parental ability of the individuals seeking custody
          In B.M.R., we also took into account the father’s history of parenting
towards B.M.R. and his other children, which included long periods without
visitation and without providing for his children financially. Id. As addressed
above, Frederick has never paid child support for any of his eight other children.
 
          5.       The programs available to assist these individuals in promoting the
child’s best interest
 
          In considering this factor in B.M.R., we noted that the father had enrolled in
college courses, but had not registered for classes to improve his parenting skills
while in prison. Id. Although the record here does not indicate whether Frederick
has registered for parenting classes, he has only signed up for training in
landscaping and is on the waiting list.
          After considering the evidence in the light most favorable to CPS and
applying the Holley factors to that evidence, we conclude that the evidence raises
triable issues for the jury’s determination concerning whether terminating
Frederick’s parental rights is in the best interest of T.F. Accordingly, the trial court
erred by directing a verdict in favor of Frederick based on section 161.001(2).
          We sustain CPS’s first issue.



 
Conclusion
          We reverse the judgment of the trial court and remand for a new trial.




     Elsa Alcala
     Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.