NUMBER 13-08-00101-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


IN THE INTEREST OF E.A.R., A CHILD


 




On appeal from the 24th District Court of Victoria County, Texas.


 




MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Benavides


 Appellant, Duane Avery Rawlins, appeals from the trial court's order terminating his
parent-child relationship with E.A.R. He raises one issue on appeal. We affirm.

I. Background


 On September 8, 1995, E.A.R. was born at the University of Texas Medical Branch
at Galveston. Her mother, Susanna Parish, was incarcerated during the entire gestational
period. For the first several months of her life, E.A.R. lived with Susanna's mother. In
approximately March 1996, Susanna was paroled, and she and Rawlins took E.A.R. to
their home in Pasadena, Texas, where E.A.R. lived with them until they separated in
August or September 1996. Susanna took E.A.R. and moved out. Subsequently,
Susanna dropped E.A.R. off with Rawlins, promising to pick her up the next day. Susanna
did not return, and Rawlins took E.A.R. to stay with his mother for a couple of weeks in
Goliad, Texas.

 In May 1997, Rawlins was sentenced to twenty-five days in jail for misdemeanor
possession of marijuana. During the time he was incarcerated, Rawlins arranged for
E.A.R. to stay with a daycare facility. 

 Subsequently, when E.A.R. reached approximately 18 months of age, Rawlins's
mother called Child Protective Services to report Rawlins. Child Protective Services told
Rawlins that he must voluntarily send E.A.R. to live with one of his half-nieces. He
eventually made arrangements for E.A.R. to live with his half-niece Rene Thomas and her
family. From approximately June 1997 until 2005, when the Thomases filed paperwork to
adopt E.A.R., Rawlins had no contact with her. 

 In January 2005, Rawlins was arrested and charged with aggravated assault with
a deadly weapon. He learned of E.A.R.'s whereabouts during this incarceration when the
Thomases' attorney sent him a letter requesting that he voluntarily relinquish his parental
rights to E.A.R. He refused, and suit was filed in Brazoria County, Texas regarding
termination of his parental rights and the proceedings for adoption. On March 18, 2005,
Rawlins pleaded guilty to the aggravated assault with a deadly weapon charge and was
sentenced to ten years in prison.

 Prior to the termination hearing, the Thomases had to forgo their adoption
proceedings because they were moving out of the country and did not have the legal rights
to E.A.R. that they needed to obtain the requisite travel documentation for her. In July
2006, the Thomases relinquished control over E.A.R. to Child Protective Services which,
because E.A.R. suffers from a bipolar disorder, among other psychological problems,
placed her in a psychological treatment facility in the Texas Hill Country, outside Kerrville,
Texas.

 On December 12, 2007, the trial court held a hearing regarding the termination of
Rawlins's parent-child relationship with E.A.R. On January 11, 2008, the trial court
terminated Rawlins's parental relationship with E.A.R. on the grounds provided in section
161.001(1)(q) of the family code. See Tex. Fam. Code Ann. § 161.001(1)(q) (Vernon 2008)
(stating that a parent's rights can be terminated when the parent has "knowingly engaged
in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii)
confinement or imprisonment and inability to care for the child for not less than two years
from the date of filing the petition."). This appeal ensued. 

II. Preservation of Error


 Before addressing Rawlins's appellate issue, we must first decide whether he
properly preserved the issue for our review. The Texas Department of Family and
Protective Services ("TDFPS") argues that Rawlins's statement of points presented to the
lower court was too general and, therefore, did not satisfy family code section 263.405(i),
which provides:

 The appellate court may not consider any issue that was not specifically
presented to the trial court in a timely filed statement of the points on which
the party intends to appeal or in a statement combined with a motion for new
trial. For purposes of this subsection, a claim that a judicial decision is
contrary to the evidence or that the evidence is factually or legally insufficient
is not sufficiently specific to preserve an issue for appeal.


Id. § 263.405(i) (Vernon 2008).


 In his statement of points, Rawlins asserted:


V.



 The evidence introduced at the trial of this matter was legally insufficient to
support the trial court's finding that Duane Avery Rawlins knowingly engaged
in criminal conduct that resulted in Duane Avery Rawlins' [sic] conviction of
an offense and confinement or imprisonment and inability to care for the
child for not less than two years from the date of the filing of the petition.

 

VI.



 The evidence introduced at the trial of this matter was factually insufficient
to support the trial court's finding that Duane Avery Rawlins knowingly
engaged in criminal conduct that resulted in Duane Avery Rawlins' [sic]
conviction of an offense and confinement or imprisonment and inability to
care for the child for not less than two years from the date of the filing of the
petition.


 In In re A.J.H., the Fort Worth Court of Appeals addressed a similar issue regarding
the specificity required to raise legal and factual sufficiency points on appeal. 205 S.W.3d
79, 80 (Tex. App.-Fort Worth 2006, no pet.). In that case, the parent's statement of points
alleged:

 [T]he evidence is factually insufficient on his failure to establish his paternity
(paragraphs 8.1 and 8.2 of the judgment), on grounds (D), (E), and (N) of
section 161.001(1) of the Texas Family Code (paragraph 8, paragraph 8.3.1,
paragraph 8.3.2, and paragraph 8.3.3 of the judgment), and on best interest
(paragraph 8.4) of the judgment.

Id. In holding that the appellant properly preserved his argument, the Fort Worth Court of
Appeals noted that this "statement of points was certainly specific enough to allow the trial
judge (who presided over the entire trial and therefore was at least as familiar with the
evidence as the appellate attorney appointed six days after trial) to correct any erroneous
findings on the challenged grounds." Id. 

 Here, Rawlins directed the trial court to each ground of termination that he believed
was not supported by legally and factually sufficient evidence. We conclude that Rawlins's
statement of points was sufficiently specific to satisfy the requirements of section
263.405(i); therefore, Rawlins properly preserved his issue for appeal. See Tex. Fam.
Code Ann. 263.405(i); Lumpkin v. Dep't of Family and Protective Servs., 260 S.W.3d 524,
528-29 (Tex. App.-Houston [1st Dist.] 2008, no pet.); In re S.K.A., 236 S.W.3d 875, 899
(Tex. App.-Texarkana 2007, pet. denied); see also In re D.J.E., Nos. 13-08-00349-CV,
13-08-00350-CV, 2008 WL 5196608, at *2 (Tex. App.-Corpus Christi Dec. 11, 2008, no
pet.) (mem. op.) (holding that a statement of points asserting that the "evidence for each
termination ground was legally and factually insufficient" is sufficiently specific to preserve
the issue for appeal).

III. Sufficiency of the Evidence


 In his sole appellate issue, Rawlins argues that "the evidence was legally [and]
factually insufficient to support a finding that Duane Avery Rawlins is unable to care for the
child for not less than two years from the date of the filing of the petition."

 A. Standard of Review

 In hearings regarding the termination of parental rights, due process requires that
the State prove its case for termination by clear and convincing evidence. In re J.F.C., 96
S.W.3d 256, 263 (Tex. 2002) (citing Santosky v. Kramer, 455 U.S. 745, 769 (1982); In re
G. M., 596 S.W.2d 846, 847 (Tex. 1980)). The clear and convincing standard is defined
as the "measure or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be established." Tex. Fam.
Code Ann. § 101.007 (Vernon 2008).

 Taking this elevated standard of review into consideration, an appellate court
reviewing the legal sufficiency of the evidence in a parental termination case must
determine whether a fact-finder could reasonably form a firm belief or conviction that the
grounds for termination were proven. In re J.F.C., 96 S.W.3d at 265-66. All evidence
should be reviewed "in the light most favorable to the judgment." Id. at 266. This means
that an appellate court must assume that the fact-finder resolved any disputed facts in
favor of its finding if a reasonable fact-finder could have done so. An appellate court must
also disregard all evidence that a reasonable fact-finder could have disbelieved. City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). "If [an appellate court] determines that
no reasonable factfinder could form a firm belief or conviction that the matter that must be
proven is true, then that court must conclude that the evidence is legally insufficient." In
re J.F.C., 96 S.W.3d at 266.

 Similarly, the clear and convincing standard of review in a parental termination
hearing requires a higher level of evidence in order to be factually sufficient. See In re
C.H., 89 S.W.3d 17, 25 (Tex. 2002). The appellate factual sufficiency standard "for
reviewing termination findings is whether the evidence is such that a fact-finder could
reasonably form a firm belief or conviction about the truth of the State's allegations." Id.

 "We must determine whether, on the entire record, a fact-finder could reasonably
form a firm conviction or belief that the parent violated a provision of section 161.001(1)
and that the termination of the parent's parental rights would be in the best interest of the
child." In re M.C.T., 250 S.W.3d 161, 168 (Tex. App.-Fort Worth 2008, no pet.) (citing In
re C.H., 89 S.W.3d at 28). "If, in light of the entire record, the disputed evidence that a
reasonable fact-finder could not have credited in favor of the finding is so significant that
a fact-finder could not have reasonably formed a firm belief or conviction in the truth of its
finding, then the evidence is factually insufficient." Id. (citing In re H.R.M., 209 S.W.3d 105,
108 (Tex. 2006)).

 B. Applicable Law 

 Under section 161.001(1)(q), a parent's rights may be terminated when termination
is in the child's best interest and the parent has "knowingly engaged in criminal conduct
that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or
imprisonment and inability to care for the child for not less than two years from the date of
filing the petition." Tex. Fam. Code Ann. § 161.001(1)(q); see W.B. v. Tex. Dep't of
Protective & Regulatory Servs., 82 S.W.3d 739, 742 (Tex. App.-Corpus Christi 2002, no
pet.), disapproved on other grounds by In re J.F.C., 96 S.W.3d 256, 267 & n.39 (Tex.
2002). "Incarceration alone cannot support a termination of parental rights." W.B., 82
S.W.3d at 742 (citing Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987); In re Caballero, 53 S.W.3d 391, 395-96 (Tex. App.-Amarillo 2001, pet. denied)). 
If TDFPS establishes that the parent's knowing criminal conduct has resulted in his
confinement or incarceration for more than two years, the burden of production shifts to the
parent to "produce some evidence as to how he would provide or arrange to provide care
for the child during that period." W.B., 82 S.W.3d at 742 (citing Caballero, 53 S.W.3d at
396). Some factors to be considered when evaluating ability to care "include the
availability of financial and emotional support from the incarcerated parent." Brazoria
County Children's Protective Servs. v. Frederick, 176 S.W.3d 277, 279 (Tex.
App.-Houston [1st Dist.] 2004, no pet.).

 C. Discussion

 In his appeal, Rawlins does not challenge the trial court's findings that termination
of his rights is in E.A.R.'s best interest, or that his knowing criminal conduct resulted in his
incarceration for more than two years. He only attacks the trial court's finding that he
would be unable to care for E.A.R. for not less than two years from the date the petition for
termination was filed.

 Once TDFPS established, through Rawlins's own testimony, that his knowing
criminal conduct resulted in his incarceration for more than two years, (1) the burden of
production shifted to Rawlins to provide some evidence as to how he intended to care for
or arrange for E.A.R.'s care during his incarceration. W.B., 82 S.W.3d at 742; see In re
E.S.S., 131 S.W.3d 632, 640 (Tex. App.-Fort Worth 2004, no pet.) (concluding that
defendant's own statement at trial regarding his prison term was sufficient to meet
TDFPS's initial burden). Rawlins failed to produce any such evidence.

 Thomas testified that from the end of May 1997 until after the Thomases began
proceedings to adopt E.A.R. during 2004, Rawlins had no contact with E.A.R. He did not
contribute any money towards E.A.R.'s support during the entire time she lived with the
Thomases. Rawlins acknowledged that, during the time E.A.R. lived with the Thomases,
he did not contact Child Protective Services to schedule visits with her, and that, due to a
work restriction, he is unable to earn money while incarcerated. Starting in June 2007,
however, Rawlins mailed some letters to E.A.R. through the care of Child Protective
Services. Out of concern that the letters, which addressed subjects like E.A.R.'s absent
mother and E.A.R.'s psychological issues, were not "quite appropriate for her to have,"
Child Protective Services decided not to give the letters to E.A.R. 

 Rawlins did not produce any evidence that he had made arrangements with a family
member to keep and care for E.A.R. during his incarceration. See W.B., 82 S.W.3d at
742-43 (noting that a parent's request that the child be placed in his sibling's custody
"would be evidence supporting preservation of the parent-child relationship."). Rawlins also
failed to present evidence regarding how he would be able to financially and emotionally
care for E.A.R. during his incarceration and presented limited information regarding his
post-incarceration plans. 

 Rawlins testified that, were he paroled, he would be paroled to a halfway house and
would remain there as long as he was required to do so. Once he satisfied the
requirements of the halfway house, he would "get a job or probably have to get a job before
I get the house or apartment . . . and if possible, have [E.A.R.] live with [him]." He is an
automotive mechanic who can "work on boats, motorcycles, small engines, lawn mower
care, just anything that runs basically on gasoline . . . ." Rawlins asserts that he wants
what is best for E.A.R. and does not want his rights to be terminated.

 Considering the factors suggested in Frederick, a fact-finder could reasonably form
(1) a firm belief or conviction that the grounds for termination were proven, and (2) a firm
belief or conviction about the truth of the State's allegations. Frederick, 176 S.W.3d at
279; see In re J.F.C., 96 S.W.3d at 265-66; In re C.H., 89 S.W.3d at 25. We conclude that
the evidence supporting the trial court's decision to terminate Rawlins's parent-child rights
was both legally and factually sufficient. We overrule Rawlins's sole appellate issue.

IV. Conclusion
 

 Having overruled Rawlins's issue on appeal, we affirm the judgment of the trial
court. 

 ______________________________

 GINA M. BENAVIDES,

 Justice


 

Memorandum Opinion delivered and 

filed this the 27th day of August, 2009.

1. The petition to terminate Rawlins's parental rights was filed on July 19, 2006. Rawlins testified that
he would be eligible for parole on March 18, 2010, more than two years after the filing of the petition.