

NUMBER 13-08-00101-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF E.A.R., A CHILD

### On appeal from the 24th District Court of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, Duane Avery Rawlins, appeals from the trial court's order terminating his parent-child relationship with E.A.R. He raises one issue on appeal. We affirm.

## I. BACKGROUND

On September 8, 1995, E.A.R. was born at the University of Texas Medical Branch at Galveston. Her mother, Susanna Parish, was incarcerated during the entire gestational period. For the first several months of her life, E.A.R. lived with Susanna's mother. In approximately March 1996, Susanna was paroled, and she and Rawlins took E.A.R. to their home in Pasadena, Texas, where E.A.R. lived with them until they separated in

August or September 1996. Susanna took E.A.R. and moved out. Subsequently, Susanna dropped E.A.R. off with Rawlins, promising to pick her up the next day. Susanna did not return, and Rawlins took E.A.R. to stay with his mother for a couple of weeks in Goliad, Texas.

In May 1997, Rawlins was sentenced to twenty-five days in jail for misdemeanor possession of marijuana. During the time he was incarcerated, Rawlins arranged for E.A.R. to stay with a daycare facility.

Subsequently, when E.A.R. reached approximately 18 months of age, Rawlins's mother called Child Protective Services to report Rawlins. Child Protective Services told Rawlins that he must voluntarily send E.A.R. to live with one of his half-nieces. He eventually made arrangements for E.A.R. to live with his half-niece Rene Thomas and her family. From approximately June 1997 until 2005, when the Thomases filed paperwork to adopt E.A.R., Rawlins had no contact with her.

In January 2005, Rawlins was arrested and charged with aggravated assault with a deadly weapon. He learned of E.A.R.'s whereabouts during this incarceration when the Thomases' attorney sent him a letter requesting that he voluntarily relinquish his parental rights to E.A.R. He refused, and suit was filed in Brazoria County, Texas regarding termination of his parental rights and the proceedings for adoption. On March 18, 2005, Rawlins pleaded guilty to the aggravated assault with a deadly weapon charge and was sentenced to ten years in prison.

Prior to the termination hearing, the Thomases had to forgo their adoption proceedings because they were moving out of the country and did not have the legal rights to E.A.R. that they needed to obtain the requisite travel documentation for her. In July 2006, the Thomases relinquished control over E.A.R. to Child Protective Services which,

2

because E.A.R. suffers from a bipolar disorder, among other psychological problems, placed her in a psychological treatment facility in the Texas Hill Country, outside Kerrville, Texas.

On December 12, 2007, the trial court held a hearing regarding the termination of Rawlins's parent-child relationship with E.A.R. On January 11, 2008, the trial court terminated Rawlins's parental relationship with E.A.R. on the grounds provided in section 161.001(1)(q) of the family code. *See* TEX. FAM. CODE ANN. § 161.001(1)(q) (Vernon 2008) (stating that a parent's rights can be terminated when the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition."). This appeal ensued.

## II. PRESERVATION OF ERROR

Before addressing Rawlins's appellate issue, we must first decide whether he properly preserved the issue for our review. The Texas Department of Family and Protective Services ("TDFPS") argues that Rawlins's statement of points presented to the lower court was too general and, therefore, did not satisfy family code section 263.405(i), which provides:

> The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial. For purposes of this subsection, a claim that a judicial decision is contrary to the evidence or that the evidence is factually or legally insufficient is not sufficiently specific to preserve an issue for appeal.

*Id.* § 263.405(i) (Vernon 2008).

In his statement of points, Rawlins asserted:

V.

The evidence introduced at the trial of this matter was legally insufficient to

3

support the trial court's finding that Duane Avery Rawlins knowingly engaged in criminal conduct that resulted in Duane Avery Rawlins' [sic] conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition.

VI.

The evidence introduced at the trial of this matter was factually insufficient to support the trial court's finding that Duane Avery Rawlins knowingly engaged in criminal conduct that resulted in Duane Avery Rawlins' [sic] conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition.

In *In re A.J.H.*, the Fort Worth Court of Appeals addressed a similar issue regarding the specificity required to raise legal and factual sufficiency points on appeal. 205 S.W.3d 79, 80 (Tex. App.–Fort Worth 2006, no pet.). In that case, the parent's statement of points alleged:

[T]he evidence is factually insufficient on his failure to establish his paternity (paragraphs 8.1 and 8.2 of the judgment), on grounds (D), (E), and (N) of section 161.001(1) of the Texas Family Code (paragraph 8, paragraph 8.3.1, paragraph 8.3.2, and paragraph 8.3.3 of the judgment), and on best interest (paragraph 8.4) of the judgment.

*Id.* In holding that the appellant properly preserved his argument, the Fort Worth Court of Appeals noted that this "statement of points was certainly specific enough to allow the trial judge (who presided over the entire trial and therefore was at least as familiar with the evidence as the appellate attorney appointed six days after trial) to correct any erroneous findings on the challenged grounds." *Id.*

Here, Rawlins directed the trial court to each ground of termination that he believed was not supported by legally and factually sufficient evidence. We conclude that Rawlins's statement of points was sufficiently specific to satisfy the requirements of section 263.405(i); therefore, Rawlins properly preserved his issue for appeal. *See* Tex. Fam. Code Ann. 263.405(i); *Lumpkin v. Dep't of Family and Protective Servs.*, 260 S.W.3d 524,

4

528-29 (Tex. App.–Houston [1st Dist.] 2008, no pet.); *In re S.K.A.*, 236 S.W.3d 875, 899 (Tex. App.–Texarkana 2007, pet. denied); *see also In re D.J.E.*, Nos. 13-08-00349-CV, 13-08-00350-CV, 2008 WL 5196608, at *2 (Tex. App.–Corpus Christi Dec. 11, 2008, no pet.) (mem. op.) (holding that a statement of points asserting that the "evidence for each termination ground was legally and factually insufficient" is sufficiently specific to preserve the issue for appeal).

### III. SUFFICIENCY OF THE EVIDENCE

In his sole appellate issue, Rawlins argues that "the evidence was legally [and] factually insufficient to support a finding that Duane Avery Rawlins is unable to care for the child for not less than two years from the date of the filing of the petition."

### A.      Standard of Review

In hearings regarding the termination of parental rights, due process requires that the State prove its case for termination by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re G. M.*, 596 S.W.2d 846, 847 (Tex. 1980)). The clear and convincing standard is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

Taking this elevated standard of review into consideration, an appellate court reviewing the legal sufficiency of the evidence in a parental termination case must determine whether a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.F.C.*, 96 S.W.3d at 265-66. All evidence should be reviewed "in the light most favorable to the judgment." *Id.* at 266. This means that an appellate court must assume that the fact-finder resolved any disputed facts in

favor of its finding if a reasonable fact-finder could have done so. An appellate court must also disregard all evidence that a reasonable fact-finder could have disbelieved. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "If [an appellate court] determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

Similarly, the clear and convincing standard of review in a parental termination hearing requires a higher level of evidence in order to be factually sufficient. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). The appellate factual sufficiency standard "for reviewing termination findings is whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations." *Id*.

"We must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated a provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child." *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.–Fort Worth 2008, no pet.) (citing *In re C.H.*, 89 S.W.3d at 28). "If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not have reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)).

### B. Applicable Law

Under section 161.001(1)(q), a parent's rights may be terminated when termination is in the child's best interest and the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or

imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(1)(q); *see W.B. v. Tex. Dep't of Protective & Regulatory Servs.*, 82 S.W.3d 739, 742 (Tex. App.–Corpus Christi 2002, no pet.), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 & n.39 (Tex. 2002). "Incarceration alone cannot support a termination of parental rights." *W.B.*, 82 S.W.3d at 742 (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re Caballero*, 53 S.W.3d 391, 395-96 (Tex. App.–Amarillo 2001, pet. denied)). If TDFPS establishes that the parent's knowing criminal conduct has resulted in his confinement or incarceration for more than two years, the burden of production shifts to the parent to "produce some evidence as to how he would provide or arrange to provide care for the child during that period." *W.B.*, 82 S.W.3d at 742 (citing *Caballero*, 53 S.W.3d at 396). Some factors to be considered when evaluating ability to care "include the availability of financial and emotional support from the incarcerated parent." *Brazoria County Children's Protective Servs. v. Frederick*, 176 S.W.3d 277, 279 (Tex. App.–Houston [1st Dist.] 2004, no pet.).

## C.    Discussion

In his appeal, Rawlins does not challenge the trial court's findings that termination of his rights is in E.A.R.'s best interest, or that his knowing criminal conduct resulted in his incarceration for more than two years. He only attacks the trial court's finding that he would be unable to care for E.A.R. for not less than two years from the date the petition for termination was filed.

Once TDFPS established, through Rawlins's own testimony, that his knowing

criminal conduct resulted in his incarceration for more than two years,[1] the burden of production shifted to Rawlins to provide some evidence as to how he intended to care for or arrange for E.A.R.'s care during his incarceration. *W.B.*, 82 S.W.3d at 742; *see In re E.S.S.*, 131 S.W.3d 632, 640 (Tex. App.–Fort Worth 2004, no pet.) (concluding that defendant's own statement at trial regarding his prison term was sufficient to meet TDFPS's initial burden). Rawlins failed to produce any such evidence.

Thomas testified that from the end of May 1997 until after the Thomases began proceedings to adopt E.A.R. during 2004, Rawlins had no contact with E.A.R. He did not contribute any money towards E.A.R.'s support during the entire time she lived with the Thomases. Rawlins acknowledged that, during the time E.A.R. lived with the Thomases, he did not contact Child Protective Services to schedule visits with her, and that, due to a work restriction, he is unable to earn money while incarcerated. Starting in June 2007, however, Rawlins mailed some letters to E.A.R. through the care of Child Protective Services. Out of concern that the letters, which addressed subjects like E.A.R.'s absent mother and E.A.R.'s psychological issues, were not "quite appropriate for her to have," Child Protective Services decided not to give the letters to E.A.R.

Rawlins did not produce any evidence that he had made arrangements with a family member to keep and care for E.A.R. during his incarceration. *See W.B.*, 82 S.W.3d at 742-43 (noting that a parent's request that the child be placed in his sibling's custody "would be evidence supporting preservation of the parent-child relationship."). Rawlins also failed to present evidence regarding how he would be able to financially and emotionally care for E.A.R. during his incarceration and presented limited information regarding his

---

[1] The petition to terminate Rawlins's parental rights was filed on July 19, 2006. Rawlins testified that he would be eligible for parole on March 18, 2010, more than two years after the filing of the petition.

post-incarceration plans.

Rawlins testified that, were he paroled, he would be paroled to a halfway house and would remain there as long as he was required to do so. Once he satisfied the requirements of the halfway house, he would "get a job or probably have to get a job before I get the house or apartment . . . and if possible, have [E.A.R.] live with [him]." He is an automotive mechanic who can "work on boats, motorcycles, small engines, lawn mower care, just anything that runs basically on gasoline . . . ." Rawlins asserts that he wants what is best for E.A.R. and does not want his rights to be terminated.

Considering the factors suggested in *Frederick*, a fact-finder could reasonably form (1) a firm belief or conviction that the grounds for termination were proven, and (2) a firm belief or conviction about the truth of the State's allegations. *Frederick*, 176 S.W.3d at 279; *see In re J.F.C.*, 96 S.W.3d at 265-66; *In re C.H.*, 89 S.W.3d at 25. We conclude that the evidence supporting the trial court's decision to terminate Rawlins's parent-child rights was both legally and factually sufficient. We overrule Rawlins's sole appellate issue.

## IV. CONCLUSION

Having overruled Rawlins's issue on appeal, we affirm the judgment of the trial court.

 

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 27th day of August, 2009.

9