

# NUMBER 13-15-00114-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF S.R., T.R., AND R.R., CHILDREN

## On appeal from the County Court at Law No. 5
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

This case involves the involuntary termination of parental rights.[1]   *See* TEX. FAM.

---

[1] This termination case involves five children.  The children are S.R., T.R., and R.R. (father S.M.R.), J.R. (father E.N.), and S.R.2 (father G.R.).   The children's mother is A.R.   The Texas Department of Family and Protective Services sought termination of the mother's and each of the father's parental rights.   The Department later abandoned its request for termination of the parental rights of father G.R. to his child S.R.2.   Following a bench trial, the trial court terminated the rights of father S.M.R. to his children T.R., S.R., and R.R. and the rights of father E.N. to his child J.R.   It declined to terminate the parental relationship between A.R. and her five children.   S.M.R. appeals the termination of his parental rights. E.N. does not.

We use the initials of the involved parties to protect the identity of the minor children.   *See* TEX. FAM. CODE ANN. § 109.003(d) (West, (West, Westlaw through 2013 3d C.S.); TEX. R. APP. P. 9.8.

CODE ANN. § 161.001 (West, Westlaw through 2013 3d C.S.). By three issues, appellant S.M.R., the father of S.R., T.R., and R.R., contends that the evidence was neither legally nor factually sufficient to support the trial court's section 161.001(1) findings, including that S.M.R. had: (1) "voluntarily left the children alone or in the possession of another without providing adequate support for the children and remained away for at least six months"; (2) "constructively abandoned his children"; and (3) "knowingly engaged in criminal conduct that has resulted in [his] conviction and . . . [his] imprisonment and inability to care for the children . . . ." *See id.* § 161.001(1)(C), (N) & (Q). We affirm.

## I.    STANDARD OF REVIEW

Before terminating parental rights, the trial court must find (1) that the parent committed an act prohibited by section 161.001(1) of the family code, and (2) that termination is in the best interest of the child. *Id.* § 161.001; *see In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Due process requires that the State prove its case for termination by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002) (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980)); *see* TEX. FAM. CODE ANN. § 161.001. The clear and convincing standard is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2013 3d C.S.).

In reviewing the legal sufficiency of the evidence supporting parental termination, we must therefore "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction

2

that its finding was true." *In re J.L.*, 163 S.W.3d at 85 (quoting *In re J.F.C.*, 96 S.W.3d at 266); *In re D.S.P.*, 210 S.W.3d at 778. In a factual sufficiency review of the evidence supporting parental termination, we must give due deference to the factfinder's findings and not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). "We must determine whether, on the entire record, a fact[]finder could reasonably form a firm conviction or belief that the parent violated a provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child." *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.—Fort Worth 2008, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002)).

## II. STATUTORY GROUNDS FOR TERMINATION[2]

On appeal, S.M.R. does not challenge the trial court's finding that termination of his parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2). Instead, S.M.R. alleges that the evidence is legally and factually insufficient to support the trial court's findings on the statutory grounds for termination. *See id.* § 161.001(1).

### A. Subsection Q

By his third issue, S.M.R. contends that the evidence is insufficient to establish that he "knowingly engaged in criminal conduct that has resulted in [his] conviction . . . and confinement or imprisonment and his inability to care for the children for not less than two years from the date of filing the petition." *See id.* § 161.001(1)(Q). Specifically,

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

S.M.R. contends that "nothing in the record other than his incarceration indicates that [he] has demonstrated an inability to care for his children." We disagree.

### 1. Applicable Law

Subsection Q of section 161.001 of the family code provides that a parent's rights may be terminated when the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." Focusing on the parent's future imprisonment and inability to care for the child, subsection 161.001(1)(Q) is to be read prospectively because it purports "to protect children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin." *In re A.V.*, 113 S.W.3d 355, 360–61 (Tex. 2003).

Incarceration alone does not show inability to care for a child. *In re Caballero*, 53 S.W.3d 391, 395–96 (Tex. App.—Amarillo 2001, pet. denied). But when the party seeking termination has established that the incarcerated parent will remain in confinement for the requisite period, the parent must then produce some evidence as to how he would provide or arrange to provide care for the child during his incarceration. *In re Caballero*, 53 S.W.3d at 395–96; *see Hampton v. Tex. Dept. of Protective & Regulatory Servs.*, 138 S.W.3d 564, 567 (Tex. App.—El Paso 2004, no pet.) (adopting *Caballero*'s analysis of the burden of proof in subsection 161.001(1)(Q)). If the parent meets that burden of production, the Department then has the burden of persuasion to show that the parent's provision or arrangement would not satisfy the parent's duty to the child. *In re E.S.S.*, 131 S.W.3d 632, 639–40 (Tex. App.—Fort Worth 2004, no pet.); *In re Caballero*,

4

53 S.W.3d at 396. In other words, the Department must then persuade the trial court that the stated arrangements would not satisfy the parent's duty or obligation to the child. *See Hampton*, 138 S.W.3d at 567.

Although the term "care" in subsection 161.001(1)(Q) has not been defined by statute or by subsequent case law, courts have held that factors to consider when deciding if there is an "inability to care" include the availability of financial and emotional support from the incarcerated parent. *Brazoria County Children's Protective Servs. v. Frederick*, 176 S.W.3d 277, 279 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In addition, cases discussing the incarcerated parent's provision of support through other people contemplate that the support will come from the incarcerated parent's family or some other person who has agreed to assume the obligation to care for the child on the parent's behalf. *In re H.R.M.*, 209 S.W.3d at 108 (citing, *e.g., In re E.S.S.*, 131 S.W.3d at 640) (explaining that incarcerated parent had ability to care for his child where he named his mother and brother as possessory conservators with visitation rights)). The supreme court's analysis emphasizes that there must be an agreement between the parties to care for the child before the incarcerated parent can show that he has the ability to care for the child through the support of others. *Id.* at 110.

2. **Analysis**

    a. **Incarceration**

It is undisputed that S.M.R. was incarcerated for the requisite two years from the date that the Texas Department of Family and Protective Services (the Department) filed

5

its petition. On June 29, 2012, S.M.R. was convicted and sentenced to four years imprisonment for felony assault family violence. And on December 10, 2012, the Department filed its "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship" in this matter. The trial court found a firm belief or conviction that the Department met its burden of establishing that S.M.R.'s criminal conduct resulted in his being incarcerated for not less than two years from the date of the filing of the petition. *See In re E.S.S.*, 131 S.W. 3d at 640. With the Department's initial burden satisfied, S.M.R. was required to produce some evidence of how he would provide or arrange to provide care for his children during his incarceration. *See In re Caballero*, 53 S.W.3d at 395–96; *see also In re E.A.R.*, No. 13-08-00101-CV, 2009 WL 2625314 at *4 (Tex. App.—Corpus Christi Aug. 27, 2009, no pet.) (mem. op.).

### b. Ability to Care for the Children or to Arrange for their Care

During the termination hearing, S.M.R. acknowledged that he had been unable to provide for the children's physical necessities because of his incarceration. The question is not, however, whether S.M.R. was able to provide the children's physical necessities but whether S.M.R. met his burden of production by providing some evidence of how he would care for the children or how he would arrange to provide care for his children while he remained incarcerated. *See id.*

### 1. S.M.R.'s Ability to Care for the Children

To determine whether there was some evidence of how S.M.R., himself, would provide care for his children, we look at the evidence regarding the availability of financial

6

and emotional support from S.M.R. *See Frederick*, 176 S.W.3d at 279; *In re B.M.R.*, 84 S.W.3d at 818. This evidence is undisputed.

Regarding financial support, Sheryl Jackson, a caseworker with Child Protective Services assigned to A.R.'s case since 2013, testified that S.M.R. had not provided any monetary support for the children during the time the children have been in the Department's care. S.M.R. testified that he would occasionally receive money from a friend or family but otherwise did not receive any funds or have any other source of income.

S.M.R. makes the following emotional-support argument on appeal:

> [H]is acts towards his children while incarcerated and his utilization and maintaining of a relationship with the Department's caseworker (who were the conservators of the children) and the children's [Court Appointed Special Advocate (CASA)] worker in contacting the children, is evidence of him providing emotional support to his children during the Department's two years of conservatorship and [a]ppellant urges that this conduct is indicative of future behavior in that he is able to provide and maintain emotional support to his children while incarcerated.

S.M.R. claims that he provided for the children's emotional needs through the cards he made and sent to all of his children on most major holidays and on every birthday. S.M.R. testified that he sent cards telling his children that "[he] love[d] them", "miss[ed] them," and "[couldn't] wait to hold them." Jackson related through her testimony that S.M.R. sent the children letters and cartoon-character pictures that he drew and that she passed them on to the children. But Jackson testified, and S.M.R. agreed, that the children had not written to S.M.R. or responded to his cards. S.M.R. also explained that he did not communicate with the children by phone because all calls had to be arranged by a friend or family member and had to go directly to that person.

In sum, reviewing this undisputed evidence, there is no evidence that S.M.R. could provide financial support for the children. And although S.M.R. sent letters and cards to his children with his sentiments of love and concern, we cannot conclude that this is some evidence to show how S.M.R. would be able to provide care for the children during his incarceration. There is no other evidence to consider.

The trial court could have found that S.M.R. failed to meet his burden of production regarding how he would be able to care—financially and emotionally—for the children during his incarceration. S.M.R. was not able to offer financial support. His children did not respond to S.M.R.'s written correspondence and cards, and they did not have an opportunity to talk with him during his incarceration. Furthermore, even though S.M.R. argues that he provided emotional support by sending letters to his children and contacting caseworkers, he does not challenge the trial court's finding that termination of his parental rights is in the children's best interest, which includes the consideration of, among other things, the emotional and physical needs of the children now and in the future. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). We conclude that S.M.R. did not met his burden of production because he failed to produce any evidence of how he would provide care for the children while he was incarcerated.

### 2. S.M.R.'s Ability to Arrange for the Care of the Children

We next consider evidence of S.M.R.'s ability to arrange for the care of his children. S.M.R. testified that he submitted his sister as a possible placement option for the children. Karen Kitchens, a volunteer for CASA, confirmed that S.M.R. provided her with the name of his sister as a possible placement for the children. Yet when Kitchens talked

with her, S.M.R.'s sister told Kitchens that "she would be willing to care for [all] the children, but only if [A.R.'s] and [S.M.R.'s] rights were terminated."  Kitchens also related that when she called the paternal grandmother, no one answered the phone.  Kitchens testified that she discussed this with S.M.R.'s sister and his sister told her that the paternal grandmother "had some health issues" and "was incapable [of caring for the children]".

Jackson testified that S.M.R. provided her with "a couple names of relatives" for possible placement of the children.  When she called the relatives, she received no response.  Jackson further testified that S.M.R. asked CPS to consider placing the children with his brother and sister-in-law.  A home study for placement was done.  It revealed that S.M.R.'s brother had medical issues, and the study did not recommend placement of the children in the brother's home.  Jackson also explained that the trial court "at that time did not see it was appropriate to place the children with [S.M.R.'s] family."

S.M.R. does not claim that any of the parties that he submitted agreed to assume S.M.R.'s obligation to care for the children on his behalf.  *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re E.S.S.*, 131 S.W.3d at 640).  And we find no evidence in the record supporting such a conclusion.  Instead, the only agreement, if any, was contingent on the termination of the parents' rights.

Based on the above, the court could have found that S.M.R. failed to submit any evidence that he could have arranged to provide care for his children.  *See id.* at 110. Because S.M.R. did not meet his burden of production, the burden never shifted back to the Department.  *See In re Caballero*, 53 S.W. 3d at 396; *Hampton*, 138 S.W. 3d at 567;

9

*see also In re E.A.R.*, 2009 WL 2625314, at *5 (explaining that the father failed to produce any evidence that he had made arrangements with a family member to keep and care for the child during his incarceration).

But even had S.M.R. met his burden of producing some evidence of his ability to arrange for his children's care by offering his mother, sister, or brother as placement options, the Department provided testimony that S.M.R.'s mother was unable to care for the children due to health reasons, his sister would only care for the children if S.M.R.'s and A.R.'s parental rights were terminated, and the home of his brother, who had medical issues, was not deemed a proper placement for the children.  The Department also offered testimony that other relatives suggested by S.M.R. did not respond to its calls. We conclude this evidence satisfied the Department's burden of persuading the trial court that the stated arrangements would not satisfy S.M.R.'s obligation to his children.  *See In re E.S.S.*, 131 S.W.3d at 639–40; *In re Caballero*, 53 S.W.3d at 396; *see Hampton*, 138 S.W.3d at 567.

### d.    Summary

Looking at the evidence in the light most favorable to this finding, we conclude that the evidence supporting S.M.R.'s violation of subsection Q was legally and factually sufficient.  *See In re J.L.*, 163 S.W.3d at 85; *In re D.S.P.*, 210 S.W.3d at 778.   A reasonable trier of fact could have formed a firm belief or conviction that S.M.R. "knowingly engaged in criminal conduct that has resulted in [his] conviction and . . . [his] imprisonment and [his] inability to care for the children."  *See In re J.L.*, 163 S.W.3d at 85; *In re D.S.P.*, 210 S.W.3d at 778; *see also* TEX. FAM. CODE ANN. § 161.001(1)(Q).   We

overrule S.M.R.'s third issue.

## B.    Subsections C and N

By his first and second issues, S.M.R. challenges the trial court's findings that he also violated subsections C and N of section 161.001 of the family code. *See* TEX. FAM. CODE ANN. § 161.001(1)(C) & (N). Yet "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination when, as in this case, there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362; *see* TEX. FAM. CODE ANN. § 161.001. Because we have concluded that the evidence is sufficient to support the trial court's finding as to subsection Q, we need not address S.M.R.'s first and second issues challenging the trial court's findings on the other predicate grounds. *See* TEX. R. APP. P. 47.1; *see also In re J.T.*, No. 13-08-00652-CV, 2009 WL 2077184, at *12 (Tex. App.—Corpus Christi July 16, 2009, no pet.) (mem.op.).

### III.    CONCLUSION

We affirm the trial court's order terminating S.M.R.'s parental rights to his children, S.R., T.R., and R.R.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
11th day of June, 2015.

11